IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 7 |
| ALFRED YOUNES | ) |
| | ) Bankruptcy No. 14-01792 |
| Debtor. | ) |
| | ) |
| | ) |
| JERILYN JAMES | ) |
| | ) |
|     Plaintiff, | ) Adversary No. 15-09008 |
| | ) |
| v. | ) |
| | ) |
| ALFRED YOUNES | ) |
| | ) |
|     Defendant. | ) |

**TRIAL ORDER**

Plaintiff filed this adversary to contest the dischargeability of debts that Debtor owes under a divorce decree. Trial occurred in Sioux City, Iowa, on October 28, 2015. David Forsyth appeared for Debtor Alfred Younes ("Debtor"). Wil Forker appeared for Plaintiff Jerilyn James ("Plaintiff"). The Court took the matter under advisement without briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

Plaintiff and Debtor are ex-spouses. During their marriage, they were obligated to various creditors. They later divorced. The Iowa District Court set

forth who would be liable for which debts in the divorce decree. The decree allocated certain debts to Debtor and certain debts to Plaintiff. The decree also provided that both parties would hold harmless or indemnify the other on the debts allocated to them.

Debtor filed bankruptcy. He scheduled the debts allocated to him in the divorce decree for discharge. Plaintiff filed this adversary. Plaintiff argues that these debts are either nondischargeable domestic support obligations under 11 U.S.C. § 523(a)(5) or nondischargeable debts to a former spouse incurred in the course of a marital dissolution proceeding under 11 U.S.C. § 523(a)(15). Debtor argues that the obligations are not in the nature of support, as required by § 523(a)(5), and are not owed directly to Plaintiff as required by § 523(a)(15). Plaintiff also seeks an award of the costs and fees for bringing this action.

The Court finds that Debtor's obligation to hold Plaintiff harmless or indemnify her is a nondischargeable debt to a former spouse incurred in the course of a marital dissolution proceeding under § 523(a)(15). As a result, the Court need not address whether Debtor's obligations under the decree are domestic support obligations under § 523(a)(5). The Court also awards Plaintiff costs and fees in accordance with the divorce decree.

## FINDINGS OF FACT

Plaintiff and Debtor met online in 2007. When they met, Plaintiff lived in the United States and Debtor lived in Jordan. Plaintiff visited Debtor twice in Jordan. Plaintiff and Debtor married in Jordan in 2009. Debtor moved to the United States in 2010.

Debtor obtained a divorce certificate in Jordan in September 2013, a few weeks after becoming a U.S. citizen. He obtained this divorce certificate without Plaintiff's knowledge. After obtaining the divorce certificate in Jordan, but before telling Plaintiff about it, Debtor and Plaintiff purchased a home together. Plaintiff's brother, Robert Giese, loaned them money for the down payment.

Debtor and Plaintiff were divorced in Iowa District Court for O'Brien County on August 12, 2014. The divorce was contested. The divorce decree allocated marital debts roughly 50/50 between Plaintiff and Debtor. The divorce decree states:

> Each party shall hold the other harmless for any debt allocated to them. This shall include any other debts incurred individually by the party since the time of trial. In the event either party becomes liable for a debtor [sic] allocated to the other party, the defaulting party shall be obligated to the other in the amount equal to that liability, plus any legal expense, attorney's fees, and court costs incurred in defending against any lawsuit brought by that creditor.

The decree allocated the following debts to Debtor: debts to Northstar Loan, Northwest Bank, Robert Giese,[1] Bank of America on two loans, Chase on a credit card, Capital One on a credit card for two accounts, and the IRS and Iowa Department of Revenue.

Debtor filed this bankruptcy, seeking to discharge the debts allocated to him in the Iowa District Court Divorce decree. Debtor also remarried his first wife, who had remained in Jordan with their two children. Debtor's wife and children moved to the United States in April 2015. Debtor and his family currently live in the house that he purchased with Plaintiff.

The Iowa District Court's divorce decree sets forth the factual background for the debts that it allocated between Debtor and Plaintiff. Much of Debtor's testimony at the dischargeability trial conflicts with testimony reported in the divorce decree. Debtor's testimony also conflicts with the Iowa District Court's findings of fact.

At the dischargeability trial, Debtor testified that he did not participate in getting the loan from Plaintiff's brother. Debtor testified that Plaintiff had represented to him that the money she got from her brother was hers outright. Debtor also testified that Plaintiff did not disclose her credit card debt when

---

[1] Although there is no promissory note in favor of Plaintiff's brother, the debt was litigated in the divorce proceeding. The Iowa District Court specifically found that there was a marital debt to Plaintiff's brother

4

applying for the mortgage.  Mr. Giese testified during the divorce proceeding that both Debtor and Plaintiff knew about his $6,500 loan that helped them purchase the home.

The divorce decree also allocated credit card debts.  The credit cards were all in Plaintiff's name.  Debtor also testified that Plaintiff brought much of this credit card debt into the marriage without Debtor's knowledge.  Debtor also testified that the credit card debts were incurred for Plaintiff's costs during the marriage.  The Iowa District Court, however, found that much of the parties' credit card debt was incurred during the marriage and was to Debtor's benefit.  Debtor took several expensive trips to Jordan during his marriage to Plaintiff using her credit cards.  He also paid $1,100 a month in child support using these cards.  Plaintiff used the credit cards to pay medical costs.  Plaintiff suffered from several health conditions that resulted in significant medical expenses.  These costs accrued even more rapidly after Debtor cut Plaintiff off from his health insurance benefits.

After the divorce, Plaintiff moved to Commerce City, Colorado, where she currently lives.  Plaintiff works full time at a gas station convenience store.  She makes about $8.50 an hour.  Her take home pay is about $980 a month.  She also has retirement income of about $950 a month.

Plaintiff has been forced to make the minimal monthly payments on credit card debt allocated to Debtor in the divorce decree in order to avoid a negative effect on her credit score. She testified that these payments were about $1500 a month. Plaintiff has not been sued on these debts.

Plaintiff has been paying her divorce attorney. She is also paying a friend who loaned her part of the money to pay the divorce attorney. Additionally, she has been paying off the debt to her brother for the down payment on the house. She testified that she is unable to sustain these payments and also pay her living expenses. She has been going further into debt every month and must use other credit cards to pay her living expenses.

Plaintiff is also unlikely to receive a tax refund because of Debtor's nonpayment. Debtor testified that he was going to start paying the IRS $100 a month in November 2015—immediate following the hearing in this case. Debtor testified that he has not been paying this debt because the IRS did not send him anything until recently. Plaintiff pointed out, however, that even if Debtor made those payments going forward, it would not be enough to pay the debt in full before she would receive her 2015 tax refund. As a result, her tax refund would be offset against the marital debt to the IRS, which the decree allocated to Debtor.

Plaintiff testified that she does not want to file her own bankruptcy because she has an ownership interest in real estate in Weld County, Colorado. Plaintiff owns this real estate with a previous husband. It was not adjudicated in her divorce from Debtor because it was a premarital asset. Plaintiff testified that this real estate is the only asset she has and she does not want to lose it.

The divorce decree awarded Debtor the house, but required him to sell the house and split the proceeds with Plaintiff, if certain conditions arise. Those conditions arose but Debtor has not sold the house and has continued to live in it. Debtor is underwater on the house but has been making mortgage payments. Debtor has not made any other payments on debts allocated to him in the divorce decree.

Debtor testified that he does not have the money to pay the debts that the divorce decree allocated to him. Debtor testified that his wife cannot work because she has a degree in religion and does not speak English well. Debtor has a job at the Hy-Vee distribution center in Cherokee, Iowa. He makes $20.22 per hour. While he claims he cannot pay the debts or hold Plaintiff harmless, as the decree requires, he pays discretionary expenses each month. He pays $55 a month for cable television for his family. He also contributes bi-weekly to a retirement savings account.

# DISCUSSION

Plaintiff seeks a determination that the debts allocated to Debtor in the divorce decree are nondischargeable. Plaintiff argues that they are nondischargeable either as domestic support obligations under 11 U.S.C. § 523(a)(5) or as debts to a former spouse incurred in the course of a marital dissolution proceeding under § 523(a)(15). Debtor argues that the debts are not domestic support as required under § 523(a)(5). Debtor also argues that they are not "owed to" Plaintiff, as required by § 523(a)(15).

## I.  Dischargeability of Debt Under § 523(a)(5)

Plaintiff argues that the debts are nondischargeable domestic support obligations. Plaintiff argues that, had Debtor been paying on these debts instead of her, she would be able to support herself. Debtor argues that the divorce decree's allocation was not intended to support Plaintiff and that the underlying debts were not for support or maintenance. Because Debtor's obligations to Plaintiff are nondischargeable under § 523(a)(15), the Court need not address whether the debts are domestic support obligations under § 523(a)(5).

## II.  Dischargeability of Debt Under § 523(a)(15)

Plaintiff argues, in the alternative, that the debts in question are nondischargeable under § 523(a)(15). Debtor argues that the debts are not "debts

to a former spouse," as required by § 523(a)(15), because they are debts to third parties, not to Plaintiff.

The Court finds that Debtor's obligation to hold Plaintiff harmless or indemnify her on the debts is not dischargeable under § 523(a)(15). However, Debtor's direct obligations to the third party creditors do not fall under § 523(a)(15).

Section 523(a)(15) states that a discharge under § 727 does not discharge debts

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit . . .

§ 523(a)(15). This statue "is written broadly and prohibits discharge of virtually any obligation that arises from a divorce proceeding." Hoefer v. Hoefer (In re Hoefer), No. ADV 13-09073, 2014 WL 6624311, at *3 (Bankr. N.D. Iowa Nov. 20, 2014). That obligation must, however, be owed "to a spouse, former spouse, or child of the debtor." Id.

Here, the primary dispute is about whether the debts are "owed to" Plaintiff. The Court has previously addressed this issue in Hoefer. See id. There, the parties, who were ex-spouses, had entered into a dissolution agreement with a hold harmless or indemnification provision. Id. at *1. That agreement allocated a

9

vehicle debt to one of the spouses. Id. That spouse later filed bankruptcy and sought to discharge the vehicle debt. See id. The Court found that the agreement—specifically the hold harmless or indemnification provision—had created a new debt between the parties. Id. at *3. The Court also found that the exception did not apply to Debtor's direct obligation to a third-party creditor. Id. The Court reasoned that

> [t]he debt to Capital One did not arise from the dissolution decree and therefore does not fall under § 523(a)(15) even though the divorce proceedings address it. The debt between the former spouses that related to the vehicle, however, did result from the dissolution agreement. This debt, resulting from the hold harmless agreement, is the only nondischargeable debt related to the vehicle. Therefore, the Court concludes that any obligations under the hold harmless or indemnification provision cannot be discharged under § 523(a)(15), but that does not include any debt owed from Debtor directly to Capital One.

Id.

Debtor attempts to distinguish Hoefer on the basis that it addressed a consented dissolution agreement, not a court imposed allocation. The Court does not find this distinction relevant to whether or not a new debt was created. The law is well-established that a hold harmless or indemnification provision in a divorce decree creates a new debt. See Wallace v. Marble (In re Marble), 426 B.R. 316, 319 (B.A.P. 8th Cir. 2010); see also In re Hoefer, 2014 WL 6624311, at *3 ("A requirement in a divorce decree to hold harmless or indemnify a spouse for joint obligations during a marriage creates a 'new' debt, running solely between former

spouses."). Moreover, § 523(a)(15) includes debts "incurred by the debtor in the course of a divorce or separation **or** in connection with a separation agreement." § 523(a)(15) (emphasis added). It expressly contemplates both scenarios. That the court imposed the allocation, rather than the parties agreeing to it, is irrelevant to whether the debt is dischargeable under § 523(a)(15).

Debtor also asks the Court to reconsider its decision in <u>Hoefer</u>. After reviewing decisions of other bankruptcy courts on the same issue, the Court finds its decision in <u>Hoefer</u> to be well supported. <u>See e.g.</u>, Jaeger-Jacobs v. Jaeger-Jacobs (In re Jaeger-Jacobs), 490 B.R. 352 (Bankr. E.D. Wis. 2013); <u>Reinhardt v. Reinhardt</u> (<u>In re Reinhardt</u>), 478 B.R. 455 (Bankr. M.D. Fla. 2012).

The Court finds that Plaintiff's claims against Debtor based on the hold harmless or indemnification provision in the divorce decree are nondischargeable debts to a former spouse incurred in the course of a marital dissolution proceeding under § 523(a)(15). However, as in <u>Hoefer</u>, § 523(a)(15) does not apply to Debtor's direct obligation to the third-party creditors.

### III. Costs and Fees

Plaintiff seeks costs and fees for bringing this action. Plaintiff points out that the divorce decree provides her with a right to reimbursement for any costs incurred in collecting against Debtor. Plaintiff notes that she missed three days of work to testify at the trial, paid $255 for transportation

11

from Colorado, filled the truck she borrowed from her brother with gas, and paid her attorney a $1000 retainer. Debtor did not contest this position at trial.

The Court finds that, under the terms of the divorce decree, an award of costs and fees is warranted. The Court will award Plaintiff $1,435.00 in costs and fees.

## CONCLUSION

**WHEREFORE**, the Court finds that Debtor's obligation under the divorce decree to hold harmless/indemnify Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(15).

**FURTHER**, the Court awards $1,435.00 in costs and fees to Plaintiff.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered:
February 10, 2016

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE